

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NO. WR-97,366-01

## IN RE TEXAS DEPARTMENT OF CRIMINAL JUSTICE, Relator

### ON MOTION FOR LEAVE TO FILE
### PETITION FOR WRIT OF MANDAMUS
### AND THE ACCOMPANYING PETITION
### IN CAUSE NO. 2019D03091
### IN THE CRIMINAL DISTRICT COURT NO. 1
### EL PASO COUNTY

*Per curiam.*

## OPINION

We have before us a motion for leave to file a petition for writ of mandamus and accompanying petition. The Relator in this case is the Texas Department of Criminal Justice (TDCJ). Because this case involves a death sentence, TDCJ properly filed the motion and petition in this Court. *See Padilla v. McDaniel*, 122

S.W.3d 805, 808 (Tex. Crim. App. 2003).

## BACKGROUND

Real Party in Interest Facundo Chavez was convicted of capital murder and sentenced to death in August 2023. The convicting court is the Criminal District Court No. 1 of El Paso County. The Respondent in this case is the elected judge of the convicting court, the Honorable Diane Navarrete.

Chavez's direct appeal is pending in this Court. *See Chavez v. State*, No. AP-77,117. As of the date of this opinion, Chavez has not yet filed an application for a postconviction writ of habeas corpus. *See* TEX. CODE CRIM. PROC. art. 11.071. But he does have postconviction habeas counsel: the Office of Capital and Forensic Writs (OCFW).

In August 2025, OCFW filed in the convicting court an ex parte motion for funds to hire a neuropsychologist. *See id.* § 3. Respondent granted that motion in October 2025. Upon retaining a neuropsychologist, OCFW arranged for "contact visit[s]" between Chavez and the neuropsychologist at the Polunsky Unit, one of TDCJ's prison facilities, on February 9 and 10, 2026.[1]

As February 9 approached, OCFW filed an ex parte motion asking the

---

[1] Unless otherwise stated, all subsequent calendar dates in this opinion refer to the year 2026.

convicting court to compel TDCJ to remove Chavez's restraints during those visits. On January 29, Respondent granted OCFW's request, entering an "Ex Parte, Under Seal Order" (Ex Parte Unshackling Order) directing TDCJ "to remove Mr. Chavez's restraints during his contact expert visits on February 9th and February 10th." The Ex Parte Unshackling Order is at the heart of this mandamus action.

The following week, on February 5, TDCJ filed in this Court a "Motion to Stay Trial Court's Ex Parte Discovery Order and Motion for an Expedited Ruling." The motion asked us to "stay the [Ex Parte Unshackling Order] pending the disposition of TDCJ's forthcoming petition for a writ of mandamus." We granted this motion without a written order the following day (First Stay).

TDCJ then transmitted its mandamus pleadings to this Court on February 13, arguing that ex parte communications, including the Ex Parte Unshackling Order at issue in this case, are prohibited unless expressly authorized by law. *See In re City of Lubbock*, 666 S.W.3d 546, 556 (Tex. Crim. App. 2023). There being no express authorization within Article 11.071 for ex parte communications regarding contact visits or inmate shackling, "the trial court had a ministerial duty to deny Chavez's ex parte motion to compel and any other request filed ex parte." TDCJ therefore asked this Court to "direct [Judge Navarrete] to vacate" the Ex Parte

Unshackling Order.

But there was a problem. By the time TDCJ transmitted its mandamus pleadings, the Ex Parte Unshackling Order had expired—February 9 and 10 had come and gone, apparently with no expert visits taking place on those dates. There being no live controversy, this Court might have summarily dismissed TDCJ's mandamus pleadings as moot. Yet TDCJ urged us not to do so, citing the "capable of repetition, yet evading review" exception to the mootness doctrine. *See, e.g.*, *Ex parte Bohannan*, 350 S.W.3d 116, 119–20 (Tex. Crim. App. 2011).

Meanwhile, OCFW again arranged for contact visits between Chavez and the neuropsychologist at the Polunsky Unit, with these visits scheduled for March 9 and 10. On February 19—before we had taken any action on TDCJ's mandamus pleadings—OCFW filed another motion asking the convicting court "to compel TDCJ to remove Mr. Chavez's restraints during expert evaluation[s] on March 9th and 10th, 2026." The motion claimed that it had been sent "to all parties" (i.e., not ex parte). The record suggests that the motion was at least sent to the El Paso County District Attorney's Office.

On March 6, Judge Navarrete granted OCFW's motion by entering an order (Public Unshackling Order) purporting to "vacate[]" the Ex Parte Unshackling Order. Like the Ex Parte Unshackling Order, the Public Unshackling Order

directed TDCJ to remove Chavez's restraints during his visits with his expert. But whereas the Ex Parte Unshackling Order referred to contact visits on February 9 and 10, the Public Unshackling Order referred to visits on March 9 and 10. The record suggests that a copy of the Public Unshackling Order was transmitted to various lawyers within the Attorney General's Office (representing TDCJ in these proceedings) and the El Paso County District Attorney's Office. OCFW promptly alerted this Court to the Public Unshackling Order.

And we promptly stayed it. "Such discovery orders" (i.e., the Ex Parte Unshackling Order and Public Unshackling Order), we said, "are STAYED pending this Court's review and resolution of the mandamus matter before us." *In re Tex. Dep't of Crim. Justice*, No. WR-97,366-01 (Tex. Crim. App. Mar. 6, 2026) (not designated for publication) (Second Stay).

Our decision in this matter will therefore potentially affect at least four items: the First Stay, the Second Stay, the Ex Parte Unshackling Order, and the Public Unshackling Order. We note, however, that TDCJ has only initiated mandamus proceedings against the Ex Parte Unshackling Order. It has not sought mandamus relief from the Public Unshackling Order.

## MOOTNESS

As mentioned, the Ex Parte Unshackling Order has expired. So, before

moving on, we must decide whether to dismiss (or rather, deny leave to file) TDCJ's mandamus petition as moot.

A case is moot when a justiciable controversy no longer exists between the parties or when the parties no longer have a legally cognizable interest in the outcome. *Tex. Dep't of Family & Protective Services v. N.J.*, 644 S.W.3d 189, 192 (Tex. 2022). When a case becomes moot, the court ordinarily loses jurisdiction and cannot consider the merits, because any resulting opinion would be advisory. *See State ex rel. Best v. Harper*, 562 S.W.3d 1, 6 (Tex. 2018).

But not always. Like the United States Supreme Court, *see Weinstein v. Bradford*, 423 U.S. 147, 149 (1975), and our sister Court, *see General Land Office of State of Tex. v. OXY U.S.A., Inc.*, 789 S.W.2d 569, 571 (Tex. 1990), we have recognized an exception to the mootness doctrine for claims that are "capable of repetition, yet evading review." *See Bohannan*, 350 S.W.3d at 119. Under this exception, we may consider an otherwise moot claim when: (1) the challenged action was too short to be fully litigated before expiring; and (2) there is a reasonable expectation that the complaining party would face the same action again. *See id.* When both requirements are met, we may review the claim even though it may be technically moot.

Here, we find that TDCJ's mandamus claim against the Ex Parte

Unshackling Order meets both requirements and thus satisfies the "capable of repetition, yet evading review" exception. *Cf. id.* The Ex Parte Unshackling Order was entered on January 29 and pertained to visits scheduled for February 9 and 10. This would leave less than two weeks for TDCJ to initiate, and this Court to resolve, a mandamus case implicating the authority of a district judge in a capital habeas proceeding. And while this Court's First Stay alleviated this time crunch, a stay is not a long-term solution. On the contrary, the Legislature expects that capital habeas proceedings will follow a prescribed timeline. *See* TEX. CODE CRIM. PROC. art. 11.071, §§ 4, 4A. Chavez's initial application is due April 27; we will not stay Respondent's orders in perpetuity.

Further, were we to dismiss this case as moot, it is reasonable to expect that TDCJ would be placed under another order like the Ex Parte Unshackling Order. This is, after all, hardly the first time we have had to address the legality of ex parte orders entered in anticipation of capital habeas proceedings. *See In re Univ. of Tex. Med. Branch-Galveston* (*In re UTMB*), 677 S.W.3d 696, 697–98 (Tex. Crim. App. 2023); *see also In re Tex. Dep't of Crim. Justice* (*In re TDCJ*), No. WR-91,688-01, slip op. at 4–6 (Tex. Crim. App. Jun. 14, 2023) (not designated for publication). Respondent entered the Ex Parte Unshackling Order despite these decisions being readily accessible.

Affording Respondent the benefit of the doubt, she may have concluded that the Ex Parte Unshackling Order did not run afoul of our decisions in *In re UTMB* and *In re TDCJ*. If so, this only bolsters our decision to hear this case under the "capable of repetition, yet evading review" exception. Absent some intervention, we have no assurance that Respondent will not simply reenter the Ex Parte Unshackling Order with new operative dates.

We therefore decline to dismiss this case as moot. Leave to file is granted. *See* TEX. R. APP. P. 72.2. We proceed now to the merits of TDCJ's mandamus challenge.

## MANDAMUS

To obtain mandamus relief from this Court, TDCJ has to establish two things. First, it must show that it has no adequate remedy at law to redress its alleged harm. *In re State ex rel. Young v. Sixth Jud. Dist. Court of Appeals at Texarkana*, 236 S.W.3d 207, 210 (Tex. Crim. App. 2007). Second, it must show that the act it seeks to compel is "ministerial," not involving discretion or judicial reasoning. *See id.*

### *No Adequate Remedy*

On the first prong, TDCJ argues that it has no adequate remedy at law because it cannot "appeal or contest" the Ex Parte Unshackling Order. *Cf. State ex*

*rel. Rosenthal v. Poe*, 98 S.W.3d 194, 203 (Tex. Crim. App. 2003) ("Relator has no right to appeal respondent's order. We have decided that this satisfies the no adequate legal remedy mandamus requirement."). OCFW disagrees. It points out that, before seeking mandamus relief in this Court, TDCJ filed in the convicting court a "Motion for Vacatur" of the Ex Parte Unshackling Order. In OCFW's view, this vacatur motion constitutes an adequate legal remedy, making mandamus inappropriate.

We agree with TDCJ. If the ability to ask a district court to vacate an unwelcome order constituted an adequate legal remedy, then mandamus would never lie. And even if such vacatur motions might sometimes constitute an adequate legal remedy for mandamus purposes, here, the "Motion for Vacatur" was an uncertain, tedious endeavor. *Cf. Greenwell v. Court of Appeals for Thirteenth Jud. Dist.*, 159 S.W.3d 645, 648–49 (Tex. Crim. App. 2005) ("In some cases, a remedy at law may technically exist; however, it may nevertheless be so uncertain, tedious, burdensome, slow, inconvenient, inappropriate, or ineffective as to be deemed inadequate."). After all, the Ex Parte Unshackling Order was a *fait accompli* when TDCJ filed its "Motion for Vacatur."

Because TDCJ cannot appeal the Ex Parte Unshackling Order, it has no adequate legal remedy. *Accord Poe*, 98 S.W.3d at 203. TDCJ meets the first prong

for mandamus relief.

*Ministerial Act*

We have said that the second prong is satisfied if the relator can show that the respondent's action violated some "unequivocal, well-settled[,] and clearly controlling" law, for which the facts of the case would "dictate but one rational decision." *Young*, 236 S.W.3d at 210. Here, TDCJ argues that the law regarding ex parte adjudication is unequivocal and well-settled: Ex parte communications, including ex parte orders, are "prohibited unless expressly authorized by law."

In support, TDCJ points to our prior decisions in *In re UTMB* and *In re TDCJ*. *In re UTMB* struck down an ex parte order compelling a hospital to conduct brain imaging on a death-sentenced inmate in anticipation of the inmate filing his initial 11.071 application. 677 S.W.3d at 697–98. *In re TDCJ* struck down an ex parte order directing TDCJ to turn over confidential records to OCFW to aid in its preparation of another inmate's initial 11.071 application. No. WR-91,688-01, slip op. at 1–2. Both cases cited *In re City of Lubbock*, which struck down an ex parte order compelling a city police agency to produce documents to the defendant in a criminal prosecution. *See* 666 S.W.3d at 566. *City of Lubbock* held, *UTMB* paraphrased, and *TDCJ* recited that "judges are prohibited from permitting or considering ex parte communications from a party to pending litigation unless

expressly authorized by law." *Lubbock*, 666 S.W.3d at 556; *In re UTMB*, 677 S.W.3d at 697 ("[J]udges are prohibited from permitting or considering ex parte communications unless expressly authorized by law."); *In re TDCJ*, No. WR-91,688-01, slip op. at 2 (quoting *City of Lubbock*).

*UTMB* and *TDCJ* are on all fours with this case. Each of those cases dealt with ex parte orders directed at non-parties in the pre-filing stage of an initial 11.071 proceeding. The same type of order is implicated here. In each of those cases, OCFW invoked Code of Criminal Procedure Article 11.071, Section 3 as authorizing the ex parte orders in question. *See* TEX. CODE CRIM. PROC. art. 11.071, § 3(b) (pre-filing, "counsel may file with the convicting court an ex parte, verified, and confidential request for prepayment of expenses, including expert fees, to investigate and present potential habeas corpus claims"); *id.* § 3(d) (noting that claims for reimbursement of funds expending without prior approval "may be presented ex parte"). OCFW invokes that same authority here.

So, as we did in those cases, we need only note what the text of Article 11.071 makes plain. When Section 3(b) refers to an ex parte request "for prepayment of expenses," *see* TEX. CODE CRIM. PROC. art. 11.071, § 3(b), it means an ex parte request *for prepayment of expenses*. It does not mean an ex parte request for medical imaging. *See In re UTMB*, 677 S.W.3d at 697–98. It does not mean an ex parte

request for prison records. *See In re TDCJ*, No. WR-91,688-01, slip op. at 2–3. And it does not mean an ex parte request to have an inmate unshackled. A similar analysis holds for Section 3(d). *See* TEX. CODE CRIM. PROC. art. 11.071, § 3(d) (authorizing ex parte claims for reimbursement).

"The only ex parte communications expressly authorized by Article 11.071 relate to the prepayment or reimbursement of expenses." *In re UTMB*, 677 S.W.3d at 698. Here, the Ex Parte Unshackling Order does not relate to the prepayment or reimbursement of expenses. So Respondent had no authority to consider, much less grant, Chavez's request for it. *See id.* at 697 ("[J]udges are prohibited from permitting or considering ex parte communications unless expressly authorized by law."). By issuing the Ex Parte Unshackling Order, Respondent violated a ministerial duty. *See id.* She therefore has a ministerial duty to rescind it. *See In re Medina*, 475 S.W.3d 291, 298 (Tex. Crim. App. 2015). TDCJ meets the second prong for mandamus relief.

## CONCLUSION

Relief is granted. Respondent shall immediately rescind the Ex Parte Unshackling Order. Further, the First and Second Stays are lifted.

We reiterate that TDCJ has not initiated mandamus proceedings against the Public Unshackling Order. So, the Second Stay having been lifted, Respondent and

the parties will have to decide what to do about that order going forward. We note, however, that by complying with this opinion, Respondent will render the first portion of the Public Unshackling Order ("This Court's January 29, 2026, Order is vacated . . .") moot. Moreover, the second portion of the order (directing TDCJ "to remove Facundo Chavez's restraints for the expert evaluations scheduled for March 9 and 10, 2026") has expired during the pendency of these proceedings.

No motions for rehearing will be entertained. The Clerk of this Court is instructed to issue mandate immediately.

Delivered: April 16, 2026
Do Not Publish